[Civ. No. 16082. Second Dist., Div. One. Feb. 3, 1948.]

DON C. OWSLEY et al., Plaintiffs and Appellants, v. WHELAN DRUG CO., INC. (a Corporation), Defendant; JACK HAMNER, Defendant and Appellant.

George R. Maury and Samuel L. Kurland for Plaintiffs and Appellants.

Murchison & Myers; Gibson, Dunn & Crutcher and Frederic H. Sturdy for Defendant and Appellant.

DORAN, J.—This is an appeal by both parties from a judgment which permits the plaintiffs, owners of a store building, to close up one entrance thereto and a portion of a patio

therein, against the protests of the defendant Hamner, a tenant. The University Professional Building is located at the corner of Kinross and Broxton Avenues in Westwood Village, and before its completion in 1929, Hamner leased from the then owners, for use as a haberdashery, what is described as store No. 2 in said building. Mr. Hamner's lease was for approximately 3,000 square feet with a 30-foot frontage on Broxton Avenue, together with certain other space on mezzanine, basement and second floors. The rental was based on a percentage of sales and the lease contains the usual covenant for quiet enjoyment. The lease also provides that the lessors' architect will cooperate with lessees in the placing of wiring, ventilators, electrical outlets, *arranging entrances,* windows, etc. Also provided therein is the following, relied upon by plaintiffs as authorizing the proposed closing of part of the patio and of the Kinross entrance to the building: "The lessor shall have the right *to* all reasonable times to enter into and upon the premises hereby leased for the purpose of inspecting the same and for the purpose of maintaining the building and making repairs, alterations or additions thereto without any rebate of rent to the lessee for any loss of occupancy or a quiet enjoyment of the premises thereby occasioned."

Of particular interest herein is a central patio in the building, roughly 30′ x 36′, which is connected to each street by a passageway approximately 13 feet wide and 30 feet long. There are numerous doorways and windows opening off the patio and passageways including seven display windows and two doorways to the Hamner store. There is evidence that the patio is traversed by the general public and used as a short cut between Kinross and Broxton Avenues. The written lease makes no mention of this patio which stands today substantially as when the building was erected at the beginning of Hamner's tenancy in 1929. Plaintiffs Owsley acquired title to the building in August, 1945, and have leased the corner store to the Whelan Drug Co., Inc. The present action for declaratory relief was filed by the Owsleys in May, 1946, for the purpose of determining Hamner's rights to the patio area, and to enable plaintiffs to enlarge the drugstore by elimination of the patio, either in whole or in part.

The trial court found "that it was the manifest intention and agreement of the original lessor and defendant Jack Hamner, as lessee, that the latter should have occupancy of

the interior areas described in his lease ·. . . and should also have sufficient additional space left open, unobstructed and suitably improved in the area known as the passageway from Broxton Avenue to the patio, and in the patio for light and air, display of merchandise, and room for customers and the public to view such displays of merchandise and to have convenient access to such display windows and to the doorways on said patio and passageway which open into and lead from the interior store area, and . . . that all of these things are reasonably necessary for the full and beneficial use of (defendant's) interior store areas. . . . The facts were apparent to and were known by plaintiffs when they acquired title to the property.''

Notwithstanding the above finding, however, the trial court concluded that there was nothing in the lease which required plaintiffs to keep the building in the condition ''as it was originally constructed or as it or any portion of it is now, and plaintiffs are entitled to close off the said Kinross Avenue entrance and passageway,'' and to enlarge the drugstore by taking in a part of the patio. The effect of this change, as stated in defendant's brief, will be to convert the patio into a narrow ''cul de sac which by its very nature . . . would discourage exploration by passersby and would of course cease being a short cut'' from one street to the other. ''Thus under the Court's interpretation, the 'secondary corner' feature, and thus material part of the thing hired, would be destroyed.'' On the plaintiffs' cross-appeal it is insisted that the trial court should have ordered that plaintiffs were entitled to close up and build upon the entire patio area up to the wall of the defendant's store.

Defendant's brief has presented two questions: '' (1) When a lease has been signed prior to the completion of a building which is constructed around a central patio, may the lessor close off a street entrance or fill in the patio, so as to interfere with the light, air, visibility and access of passersby to the tenant's display windows and doorways? (2) In an action to determine the extent of appurtenances passing with the leasehold is parol evidence, by the original parties, admissible to show their intention before and at the time of the execution of the lease, when the lease is silent as to what is to pass as appurtenant?''

The plaintiffs' brief seeks to justify the trial court's judgment by the citation of section 820 of the Civil Code

which provides that "A tenant for years or at will has no other rights to the property than such as are given to him by the agreement or instrument by which his tenancy is acquired." However, it appears to be equally well settled that "A lease of a part of a building passes with it, as an incident thereto, everything necessarily used with or reasonably necessary to the enjoyment of the part demised." (*Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1, 10 [47 P.2d 462]; *Runyon* v. *City of Los Angeles*, 40 Cal.App. 383 [180 P. 837].) In 36 Corpus Juris 30, section 632, quoted in the above mentioned cases, it is stated: "As a general rule everything which belongs to the demised premises *or is used with,* and appurtenant to, them and which is reasonably essential to their enjoyment passes as an incident to them unless specially reserved. This rule, for example, applies to a lease of a part of a building."

More directly applicable to the present situation is the rule laid down in *Mayer* v. *Hazzard,* 10 Cal.App.2d 1, 3 [51 P.2d 189], where the court said: "Rights of ingress and egress by the usual way pass to the tenant, although not specifically mentioned in the lease, or the word 'appurtenances' be not used under the general rule that those rights essential to the use of the demised premises pass as appurtenant thereto. A tenant is entitled to the maintenance of an entrance which is necessary to the full enjoyment of his use of the property, although it may not be the only means of access. (36 Cor. Jur. 33.)."

In the language of *Von Rohr* v. *Neely,* 76 Cal.App.2d 713, 715 [173 P.2d 828], "A thing is appurtenant to something else when it stands in the relation of an incident to and is necessarily connected with the use and enjoyment of the principal . . . and agreeing in its nature and quality with the thing to which it is appendant or appurtenant." The lease involved in the Von Rohr case made use of the word "appurtenances," and the appellate court held that "Parol evidence is admissible to show what was said and done after as well as before the execution of the lease in order to indicate what was intended by the parties to be included as an appurtenance. Such evidence is not to be received for the purpose of varying the terms of the written instrument, but of arriving at the intention of the parties with reference to the subject matter of the lease. Conversations had by appellant with the lessor and with respondent, together with evidence of circumstances and occurrences that will aid the

458

court, may be shown for the purpose of ascertaining whether the things claimed by the lessee were intended to be included as appurtenances." In view of the general rule hereinbefore stated, that essential appurtenances are demised by a lease regardless of the use of that word "appurtenances" plaintiffs' contention that the Von Rohr case is inapplicable, is without merit.

█ Plaintiffs' argument that no uncertainty appears in the written instrument, and that the lease provision giving the lessor the right to make "repairs, alterations, or additions thereto," in itself authorizes a partial or complete elimination of the patio and one of the street entrances, is untenable. Nor does the fact that "the rent is based completely upon a percentage of the receipts," alter the situation. In any event, as defendant's brief avers: "Whether it is considered as an easement, consideration of a contract, or an incorporeal right, the lessee is entitled to all of that for which he contracted at the time the lease was entered into." The intention of the parties, in this respect, was therefore a vital question.

It will be remembered that the lease in question was executed before completion of the building, and provided, among other things, that the lessors' architect would cooperate with the lessees in the placing of wiring, ventilators, electrical outlets, etc., and in "arranging entrances." It cannot be doubted that the general arrangement on the ground floor in its relation to appellant's store was a matter of some importance. Likewise, it may well be that the patio with its two street entrances, affording a short cut and public passageway between Kinross and Broxton Avenues, was deemed a most valuable appurtenance. Indeed, the finding of the trial court expressly recognizes that it was the "manifest intention and agreement" of the original parties that the lessee should have "sufficient additional space . . . in the patio for light and air, display of merchandise and to the doorways on said patio and passageway" opening into appellant's interior store area. The record discloses substantial evidence to justify this finding. But while thus judicially recognizing the patio as a valuable adjunct to appellant's store, the trial court, as appellant's brief states, "by its further Findings and Conclusion, substantially deprived the tenant of these very rights when it permitted the closing of the Kinross archway and ruled that the above 'manifest intention' applied to only such of the Broxton archway as was necessary."

Had the written lease contained some definite grant of the use of the patio and street entrances to the tenant, or expressly reserved these items to the lessor, then, obviously, parol evidence as to the intentions of the signatory parties would be unnecessary and inadmissible. But such is not the case. This matter, although of evident importance, is not definitely determined in the lease. Therefore, the only proper method of arriving at a correct decision is that specified in section 1860 of the Code of Civil Procedure, and followed in *Von Rohr* v. *Neely*, 76 Cal.App.2d 713 [173 P.2d 828] hereinbefore cited, and other cases. Section 1860 provides that, "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." The exclusion of parol evidence offered for that purpose in the instant case, constitutes reversible error.

The judgment is reversed and the cause remanded for a new trial.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied February 20, 1948, and plaintiffs and appellants' petition for a hearing by the Supreme Court was denied April 1, 1948.