# Walker, Exec. v. Clifford *et al.*

*Bill in Equity for an Injunction.*

1. *Estates; conveyance of dominant and servient tenements; implied easements.*—Where the owner of both the dominant and servient tenements conveys the latter, retaining the former, no easement is reserved by implication, unless it is apparent, continuous and strictly necessary to the enjoyment of the property retained.

2. *Same; same; same; case at bar.*—The owner of a building leased a portion thereof to be used as a hotel, and reserved a part of said building, which he subsequently leased to a saloon keeper, who kept therein a saloon and billiard parlor. The main entrance to the saloon was from a street upon which it opened and which was a thoroughfare in the city. Upon the same street there was the main entrance of the hotel which led to the rotunda of the hotel, where the office of the hotel was located. In this rotunda there was a door opening into the billiard room back of the bar in the saloon, and which was separated therefrom by glass doors; and through this door customers of the saloon could enter thereto. *Held*: There was not reserved by implication to the portion of the building leased as a saloon an easement, giving the

[Walker, Exec. v. Clifford *et al.*]

right of entrance thereto through the door opening from the hotel rotunda; since the saloon could be entered from the street as well as could the rotunda of the hotel; and, therefore, the right that would be secured by such easement was not strictly necessary to the enjoyment of the estate leased to the saloon keeper.

3. *Same; right of landlord to maintain bill to enjoin interference with easement.*—While a tenant in possession under a valid lease, during the continuance of his lease, can maintain a suit to prevent the interference with the easement attached to his leasehold estate, the landlord of such tenant' while out of possession, can not maintain a bill for the purpose of enjoining the disturbance of the enjoyment of the easement that may be attached to such leasehold estate.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

On April 13th, 1900, Wm. A. Walker, as executor of W. S. Mudd, deceased, filed his bill against M. Clifford and Annie Clifford to enjoin the obstruction of a right of way claimed by complainant over premises which had been previously leased by him to defendants.

Complainant alleged in his bill that on December 29th, 1898, he had leased by written lease to defendants for a term of two years to and inclusive of December 31st, 1900, what is known as the Florence Hotel building in Birmingham, including the hotel rotunda therein, excepting therefrom certain stores in said building, for occupancy by defendants as a hotel; that on April 1st, 1898, complainant leased to R. D. Burnett Co. certain portions of said Florence Hotel building, including the saloon and billiard room therein not leased by him to defendants, and that as a part of said lease by complainant to R. D. Burnett Co. complainant agreed that all doors opening between the part of the building leased to defendants and the 'part leased to R. D. Burnett Co. should be kept open for the use of said R. D. Burnett Co.; that the said Florence Hotel building was built especially for hotel purposes, and provided with rooms for cigar stands, barber shop, saloons and billiard halls, all of which were accessible from the hotel rotunda by doors, and that it had always been customary for persons to pass freely from the

hotel rotunda to such rooms, of which custom defendants knew at the time they made their said lease, and that the billiard room had no opening on the street, and was accessible only through the saloon or hotel rotunda, and only through the latter when the former was closed, and that defendants' took the premises rented by them with knowledge of such facts, and subject to the easement described in said bill; that on the day following the filing of such bill an election would be held; and that the said saloon would be closed, and that the only way for customers of the billiard hall to have access thereto would be through the hotel rotunda; that all parts of said hotel building supplement and are appurtenant to each other and free use of all for their purpose is essential to the value and utility of the whole, and that there was a necessary right of way through the hotel rotunda to the billiard room which defendants had no right to obstruct; that defendant, M. Clifford, acting for himself and defendant Annie Clifford, had obstructed the door leading from the hotel rotunda to the billiard room for the purpose of cutting off access to said room and refused to remove such obstruction, and threatened to continue the same as a matter of right; that R. D. Burnett Co. had called on complainant to keep said door open as provided by the contract of lease, and that unless complainant did so he would break his contract, subject himself to a claim of damage and his lease contract be impaired. The prayer of the bill was for process, and that an injunction issue restraining defendants from obstructing the door leading from the hotel rotunda to the billiard room, and from interfering in any way with the free access of said R. D. Burnett Co. to said billiard room through the hotel rotunda; that on the final hearing, said injunction be made perpetual, and for general relief. The bill was duly verified.

Upon the filing of the bill, a temporary injunction was ordered by the chancellor, and was issued and served on defendants.

On April 17th, 1900, defendants filed a joint motion to dismiss the bill for the want of equity, and also filed joint and separate demurrers to same. With the mo-

[Walker, Exec. v. Clifford *et al.*]

tion and demurrers, defendants filed a joint answer to
the bill, which answer was duly verified by the oath
of each of defendants.

The answer of defendants was as follows: Defend-
ants denied that complainant's bill correctly showed
the contract of lease by which they took said building,
and averred that same was as follows: On January 7,
1898, defendants leased the hotel premises from com-
plainant by a written lease which expired on Decem-
ber 31, 1898; that as a part of said lease complainant
gave defendants the right on the expiration thereof to
rent the premises for a further term of two years, and
that on the expiration of said lease on, to-wit, Decem-
ber 28th, 1898, in exercise of their said option or right,
defendants again leased said premises.        Defendants
admitted that R. D. Burnett Co. had been in possession
of certain parts of said building, including the saloon
and billiard room, since about April 1st, 1898, but de-
fendants denied any knowledge of the terms of the
lease under which same was occupied. Defendants also
denied that complainant had the right to agree with
said R. D. Burnett Co. that the doors between the
part of said building leased to Burnett Co. and the
hotel rotunda leased to defendants, should be kept open
for the use of said R. D. Burnett Co., and defendants
denied that they ever had any knowledge of any such
stipulation; and denied further that at the time their
lease was made, there was any saloon or billiard room
in said building; and stated that the rooms now occu-
pied as a saloon and billiard room by R. D. Burnett
Co. were at such time vacant; and defendants denied
that at such time it was customary for persons to pass
freely to and from said billiard room or saloon through
the doors opening into the hotel rotunda, and that de-
fendants knew of any such custom.        Defendants ad-
mitted that there was a door between the hotel rotunda
and the billiard room, and defendants stated that the
saloon and billiard rooms were both parts of the same
room or store, the saloon being in the front part of
same, and the billiard room being in the rear part of
same, and that the front and rear parts of said room
were divided from each other by a fixture of scroll

work and glass doors, and that said saloon and billiard room were owned and conducted by the same parties, R. D. Burnett Co., and were operated in connection with each other as a part of the same business. Defendants denied that they leased said premises subject to any easement whatsoever, or that it was the understanding that they should take same subject to any terms of easements not provided for in their contracts of lease, and defendants stated that they had always insisted on their right to close any and all doors between the billiard hall and the hotel rotunda, and that said R. D. Burnett Co. had up to January 1, 1899, paid defendants rental for defendants allowing the door between the hotel rotunda and the billiard room to remain open, and that at the time the lease of December 29th, 1898, was executed, complainant had tendered defendants a lease containing a stipulation that the doors between the hotel rotunda and billiard room should be kept open, and that defendants had refused to accept a lease containing such a stipulation on the ground that same was not in compliance with defendant's option of lease, and that thereupon said clause in said lease was stricken out. Defendants denied that all parts of said building supplemented and were appurtenant to each other, and that the free use of all was essential to the value and utility of the whole, and stated that if such had been the intention in the construction of the hotel building, such intention was abandoned by complainant by his lease to defendants without stipulation to that effect. Defendants averred that the operation of the saloon and pool tables was a great annoyance and inconvenience to them in their use of the part of said building leased to them; and that said saloon and billiard room were frequently the scenes of disorderly conduct and brawling on the part of the customers of said R. D. Burnett Co., and that defendants who used that part of the building leased to them as a hotel, were greatly embarrassed and their guests disturbed and annoyed and their business rendered less profitable thereby. Defendants denied that there was a necessary right of way through said rotunda of the hotel to the said billiard

room; and admitted that on Friday, April 13th, 1900, defendant M. Clifford did obstruct the door between the hotel rotunda and the billiard room for the purpose of cutting off access to the latter, and that he declined to remove such obstruction, and claimed that he had a right to maintain same. Defendants stated that said April 13th, 1900, being the date preceding an election day, as alleged in the bill, said R. D. Burnett Co. could not lawfully sell or give away liquors on said day, but that said R. D. Burnett Co. had the front door of their saloon and billiard room closed and were using the door opening from defendant's hotel rotunda as a place of entrance and exit for persons to whom said R. D. Burnett Co. was selling liquors contrary to law, and that such persons, many of them drunken and disorderly, were constantly passing through defendant's premises and loitering therein to the inconvenience and discomfort of defendants and their guests, so that defendant, M. Clifford, for the purpose of protecting defendants' premises from the loss and damage caused by said R. D. Burnett Co.'s customers and for the peace, quiet and good order of defendants' hotel, did obstruct said door.

On April 17th, 1900, defendants filed a motion to dissolve the injunction which had been granted against them on the denials contained in their answers on file and on the ground that there was no equity in complainant's bill.

On May 1st, 1900, said cause was submitted on defendant's motion to dissolve the injunction, and on August 13th, 1900, a decree was rendered granting said motion to dissolve the injunction on the grounds that no easement or right of way had been reserved by implication or otherwise in the premises leased to defendants, and that only R. D. Burnett Co., the lessees in possession, would have the right to enjoin the obstruction of the door, had a right to open the same existed. From the said decree this appeal is taken by complainant, and the rendition thereof is assigned as error.

CABANISS & WEAKLEY, for appellants, cited *Lumpman v. Milks*, 21 N. Y. 505; 10 Amer. & Eng. Encyc. of Law, (2d ed.), 399, note 5, 7 par.; *Hahn v. Lodge*, 28 Amer. St. Rep. 723; *Thorn v. Wilson*, 59 Amer. Rep. 209; *McMillian v. Solomon*, 42 Ala. 356; *Morrison v. King*, 62 Ill. 30; *United States v. Appleton*, 1 Sumner, 502; *Mayo v. Newhoff*, 10 Atl. Rep. 837; 1 Taylor Landloard & Tenant, § 179a.

RUDULPH & HUDDLESTON, *contra*.—Where the *quasi* servient tenement is granted while the *quasi* dominant tenement is retained, no easement is reserved by implication unless it is strictly necessary to the enjoyment of the property retained.—*Sellers v. Texas C. R. Co.*, 13 L. R. A. 657, note; 10 Amer. & Eng. Ency. Law, 420, and cases cited, (2d ed.); Washburn on Easements, § 42b; *Outerbridge v. Phelps*, 45 N. Y. Sup. Ct. 555; 58 How. Prac., 77; *Wells v. Garbutt*, 132 N. Y. 430; *Carbrey v. Willis*, 7 Allen, 364; *Raimsey v. McCormick*, 4 Cal. 245; *Paine v. Chandler*, 134 N. Y. 388; *Meredith v. Frank*, 47 N. E. Rep. 656; Tiedeman Real Prop., §§ 601-602-609; Taylor's Land & Ten., § 214.

A right of way cannot be claimed as "a necessary right of way" by one who already has a way over his own ground.—Taylor's Land. & Ten., § 214; *Carbrey v. Willis*, 7 Allen, 364.

A lessor may bring an action for only such injuries as affect his reversionary interest.—Taylor's Land. & Ten., §§ 172, 173, 200; 7 Encyc. P. & P., 256; *Tinsman v. Belvidere, etc. R. R. Co.*, 25 N. J. L. 262; *Hastings v. Livermore*, 7 Gray, 194; *Foote v. Manhattan Rwy. Co.*, 12 N. Y. Supp. 516; 58 Hun. 478; *Brown v. Bowen*, 30 N. Y. 519; *Moody v. King*, 74 Me. 497; *Baxter v. Taylor*, 4 Barn. & Ad. 72; *Dobson v. Blackmore*, 9 Q. B. 991.

HARALSON, J.—1. In the 10 Am. & Eng. Encyc. Law (2d ed.), 420, it is said, with the citation of many authorities to support the text, that "According to the established English doctrine, which is supported by some of the later American authorities, if the owner of both the *quasi* dominant and *quasi* servient tene-

ments conveys the former, reserving the latter, all such continuous and apparent *quasi* easements as are reasonably necessary to the enjoyment of the property granted, pass to the grantee, giving rise to easements by implied grant. If, on the other hand, the *quasi* servient tenement is granted, while the *quasi* dominant tenement is retained, no easement is reserved by implication, unless it is strictly necessary to the enjoyment of the property retained. These rules are founded on the principle that a grantor shall not derogate from his own grant." "A dominant estate is the one enjoying the easement, and to which it is attached; the servient estate is the one upon which the easement is imposed."—Tiedeman on Real Prop. § 497.

In *Whiting v. Gaylord*, 66 Conn. 337, it is said: "The American cases have with almost entire unanimity limited easements by implied grants to such as were open, visible,—such as would be apparent to any ordinary observer,—continuous, and necessary to the enjoyment of the estate granted or retained. * * * These cases differ considerably as to the degree of necessity which must exist in order to raise the implication that the easement or *quasi* easement passes; but they all concur in the rule just stated, that it must be one which is open, visible, and necessary."

Mr. Tiedeman states the rule thus: "If the *quasi* servient estate has been conveyed, it is a question of some doubt whether there is reserved to the grantor by implication an easement to maintain the drain or other burden upon the granted estate. The authorities, English and American, are at variance on this question. In this country the better opinion is that the rule would be the same as in the case of the conveyance of the *quasi* dominant estate, especially if it was strictly necessary to the enjoyment of the dominant estate, and the existence of the easement is apparent or known to the grantee." Tiedeman Real Prop. § 602.

The same author further observes (Section 609): "When such a necessity exists as will create by implication a right of way, is a question of fact determined by the circumstances of each particular case. Mere

inconvenience will not constitute such necessity. It must be strict necessity; but excessive expense in procuring another way would make it a case of strict necessity."

The complainant's counsel say in their brief: "The doctrine upon which complainant's bill rests is that announced in *Lampman v. Milks*, 21 N. Y. 505. It is this [quoting from the decision]: 'Where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement or portion sold, with all the benefits and burdens which appear, at the time of the sale, to belong to it, as between it and the property which the vendor retains.'" But this principle, as there announced, was afterward declared to be a *dictum*, was limited to the facts of that case, and repudiated as unsound, in *Wells v. Garbutt*, 132 N. Y. 435, where the court, citing a great array of authorities to sustain the proposition, announced that "where the owner of two parcels of land conveys one by an absolute and unqualified deed, we think that an easement will be implied in favor of the land retained by the grantor and against the land conveyed to his grantee, only in cases the burden is apparent, continuous and strictly necessary for the enjoyment of the former." See also 6 Am. & Eng. Enc. Law, (1st ed.), 143, note 1, where the authorities are collated to sustain the foregoing principle. We apprehend that the doctrine laid down in the text books as above referred to, and in *Wells v. Garbutt, supra,* sustained as it seems to us on reason and authority, is the correct one in reference to easements by implication.—*Ramsey v. McCormick,* 4 Cal. 245; *Oliver v. Dickinson,* 100 Mass. 116.

2. The appeal in this case is from a decree dissolving the preliminary injunction, granted in favor of complainant. The defendants' motion to dissolve was predicated on the grounds, that there was no equity in the bill, and on the denials contained in their sworn answer theretofore filed.

The right of complainant to maintain the bill rests solely on the ground of an implied easement or right of way over respondents' premises, existing from con-

venience and necessity, which respondents deny, setting out, as a part of their denial, the lease of complainant to them, and the facts on which they base the denial, which are not questioned by complainant. The easement claimed is not reserved in the contract of lease to respondents, and necessarily arises, if at all, by implication. That part of the premises retained by complainant, and not rented to defendants, and every part thereof, is easily accessible from the street, and the way claimed over the premises granted by him to defendants is, therefore, clearly not a way of necessity, but one merely of convenience to his other tenant, the Burnett Company. The way into the bar room is approached, as the hotel rotunda is, by a door, as stated, opening from the same street; and between this and the billiard room in the rear, there are glass doors for entrance into the latter from the front room, so that customers of the Burnett Company may pass freely in and out of the bar room and billiard or pool room, without hindrance or inconvenience. On this denial, alone, the chancellor very correctly dissolved the injunction.

3. Furthermore, a lessee or termor in possession under a valid lease may, during the continuance of his lease, maintain an action of ejectment or other proper action against his lessor, even, although he is the owner of the fee, less the term, as against any other person who takes possession of the property without his consent; and this, upon the principle, that during the term of lease he is the owner of the property, unless his ownership has been forfeited under the terms of his lease.—*Tennessee & C. R. R. Co. v. East Alabama Ry. Co.*, 75 Ala. 524; 1 Taylor Landl. & Ten., § 172. "An action for an obstruction or disturbance of the enjoyment of an easement may be maintained by any person in possession of the premises to which such easement is appurtenant."—7 Enc. Pl. & Prac. 256.

After entry of a tenant under lease he may bring actions for injuries to his possession, but " the landlord's rights, after the tenant's entry, are confined to the protection of his reversionary interest merely,—that is, to the maintenance of actions for such injuries as

would, in the ordinary course of things, continue to affect such interest after the determination of the lease; whether the injury be committed by a tenant, an undertenant, or a stranger, and whether the term shall have expired or not. * * * But the injury complained of must be of such character as permanently to affect the inheritance; and a mere disturbance, if not of a continuous nature, even though done in the assertion of a right, will not entitle the reversioner to an action."—1 Taylor Landl. & Ten., § 173, and authorities there cited; *Hastings v. Livermore*, 7 Gray, 194; *Tinsman v. Railroad Co.*, 25 N. J. Law, 255; *Brown v. Bowen*, 30 N. Y. 519.

The tenant, Burnett & Company, and not the complainant, was the proper party to bring this suit. There is no pretense in the bill, that the obstruction of the alleged easement was of injury to complainant's reversion.

The decree below is affirmed.